UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
-----

VICTORIANO BRAVO,

       Plaintiff,    **MEMORANDUM & ORDER**

  -against-        12-CV-884 (ENV)(LB)

MERSCORP, INC., *et al*,

       Defendant. x
-----------------------------------------------------------
-----

VITALIANO, D.J.

  Plaintiff Victoriano Bravo brings this action *pro se* against defendants, MERSCORP Holdings, Inc.("MERSCORP"); Mortgage Electronic Registration Systems, Inc. ("MERS"); Bank of America Corporation ("BOA"); BAC Home Loans Servicing, LP ("BAC Home Loans"); and Bank of America N.A. ("BANA"). On May 31, 2012, defendants moved to dismiss for failure to state a claim. The motion is granted in part and denied in part.

## Factual Background

  The following facts are drawn from the complaint, including the attached exhibits. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). All reasonable inferences are construed in plaintiff's favor. *See Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2008).

  On June 23, 2003, plaintiff borrowed $431,000 from Countrywide

1

Home Loans secured by a promissory note.[1] (Compl., Count 1 ¶ 2.) He also signed an accompanying mortgage instrument ("mortgage") that pledged as collateral the property plaintiff acquired with the proceeds of the loan. (Compl. Ex. 1 at 59-61, Ex. 2 at 73-105.) The mortgage designated MERS as the mortgagee of record as well as the sole "nominee for Lender and Lender's successors and assigns." (Compl. Ex. 2 at 73).

Although Bravo says he never received a signed copy of his mortgage documents,[2] (Compl., Count 1 ¶ 4), he paid his mortgage until he began experiencing financial difficulties in early 2011. At that point, he requested a modification from BAC Home Loans but was denied. (Compl., Count 1 ¶ 5.) Collections activities began in May 2011, first by BAC Home Loans and later by BANA. (Compl., Count 1 ¶¶ 7, 8)

Spurred by news stories concerning the abuses of the banking industry, Bravo became worried that he would not own his home once he paid off his mortgage. (Compl., Count 1 ¶¶ 6, 7.) Plaintiff began investigating the ownership of his mortgage and decided to stop making payments in August 2011 when he learned

---

[1] Bank of America acquired Countrywide Home Loans, Inc. on July 1, 2008. (Compl. ¶ 5.) The loan servicing branches of the two companies merged, and the surviving loan servicer is defendant BAC Home Loans Servicing LP f/k/a/Countrywide Home Loans Servicing, Inc. (Compl. ¶ 5.)

[2] It is not clear that plaintiff received the "copy of the Note and of this Security Instrument," to which he is entitled under the mortgage. (Compl. Ex. 2 at 91.) To the extent that the copies of the mortgage and note filed as Exhibit 1 to the complaint represent the only copies that Bravo was given, he received only a partial copy of the mortgage, (*compare* Compl. Ex. 1 and Comp. Ex.2), and he never was provided with a signed copy of the note, (Compl. Ex. 1 at 59-61).

2

that it was owned by Countrywide Home Loans, not BANA.³ (Compl., Count 1 ¶ 9.) Nonetheless, his investigative efforts continued into November 2011 when he discovered that the records at the Kings County Clerk's Office contradicted the information available on MERS website; the former reflected that MERS had assigned the mortgage to BANA, while the latter listed BANA as a servicer. (Compl., Count 1 ¶¶ 9, 12.) Seeking explanation, Bravo contacted BANA, BAC Home Loans,⁴ and Countrywide Home Loans by letter on December 17, 2011, requesting information about ownership of the loan and the recipients' authority to service it. (Compl., Count 1 ¶ 10; Compl. Ex. 4 at 125-27.) Defendants never replied. (Compl., Count 1 ¶ 11.)

Plaintiff demands $500,000 for "actual and future damages," (Compl., Prayer for Relief ¶ 51), as well as a declaratory judgment clarifying whether: (1) the note was properly sold by Countrywide Home Loans, (Compl., Prayer for Relief ¶ 52); (2) each defendant was a rightful nominee or assignee of the mortgage pursuant to U.C.C. § 3-104(a), (b), (Compl., Prayer for Relief ¶¶ 53-56); (3) the assignment of the mortgage was proper, (Compl., Prayer for Relief ¶ 58-61); and (4) any defendant has standing to enforce the mortgage agreement, (Compl., Prayer for Relief ¶ 64). Plaintiff also seeks an injunction prohibiting defendants from servicing

---

³ Plaintiff mischaracterizes the records he was researching at the Kings County Clerk's Office, referring repeatedly to the note instead of the mortgage.
⁴ Plaintiff addressed his letter to Bank of America Home Loan Servicing, LP. (Compl. Ex. 4 at 125.) Defendant BAC Home Loans' letterhead reflects that Bank of America Home Loan Servicing, LP and BAC Home Loans are one and the same. (Compl. Ex. 6 at 145.)

the loan. (Compl., Prayer for Relief ¶ 57.)

## Standard of Review

To survive dismissal under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Plaintiffs must provide more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 127 S. Ct. at 1965.

A court must presume the truth of all factual allegations in the complaint for purposes of Rule 12(b)(6), but the court is not bound to accept the truth of legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986). Indeed, it is the factual allegations that are paramount, as "a complaint need not pin plaintiff's claim for relief to a precise legal theory," nor does it need to provide "an exposition of his legal argument." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011). In analyzing well-pled facts, a court will draw all reasonable inferences in favor of plaintiff. *See Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007). Moreover, because plaintiff here proceeds *pro se*, his complaint must be read liberally and interpreted as raising the strongest arguments it suggests. *See McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). If a liberal reading of the complaint "gives any indication that a valid

claim might be stated," the court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Discussion

1. Real Estate Settlement Procedures Act

Plaintiff alleges that defendants[5] violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), by failing to respond to his December 17, 2011 letter requesting documentation and information about ownership of the loan. (Compl., Count 1 ¶ 11; *see also* Compl. Ex. 4 at 125-27; Pl.'s Response at ¶¶ 46-47.) Defendants argue that plaintiff's allegations fall short for two reasons. First, defendants claim that plaintiff's self-titled "Verification of Proof of Claim" did not fit the statutory description of a qualified written request ("QWR") and therefore did not require a response. Second, defendants contend that plaintiff does not allege either actual damages or "a pattern or practice of noncompliance with the requirements" of RESPA that would warrant damages under 12 U.S.C. 2605(f). (Def.'s Reply at 8.)

Pursuant to 12 U.S.C. § 2605(e)(1)(A), (2)(A)-(C), upon receipt of a QWR, a loan servicer must provide a written response within 20 days and take certain actions within 60 days, including investigating the issues raised in the QWR,

---

[5] Although plaintiff does not specify the targets of his RESPA cause of action, the Court construes the complaint as bringing the claim against the two defendants that received the letter, BANA and BAC Home Loans, as well as MERS, which, Bravo claims, directed their actions. Plaintiff does not substantiate the alleged agency arrangement with supporting facts. As such, the pleadings do not support a finding that such a control relationship existed.

making any necessary corrections, and providing the requested information or explaining its unavailability. Noncompliance entitles a borrower to actual damages as well as "additional damages [of up to $1,000], as the court may allow, in the case of a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1)(A), (B).

Not all communications from a borrower require a response under RESPA. Nor do all complaints permit recovery in the event that a borrower does not respond. The statute applies only to "written correspondence" requesting "information relating to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1)(A). Servicing is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C.A. § 2605(i)(3).

Plaintiff's correspondence falls short of the statutory definition of a QWR. While the plain language of the letter reflects that plaintiff intended to give formal notice and includes an explicit reference to RESPA, it merely seeks copies of loan documents, verification of the identity of the holder in due course of the loan, and proof of the servicer's authority to service the loan. (Compl. Ex. 4 at 125-27.) The letter says nothing about defendants' receipt of scheduled periodic payments or the amount of such payments. Thus, the letter "served as a communication challenging the validity of the loan and not a communication relating to the servicing of the loan as defined by *statute*." *Ward v. Security Atlantic Mortgage*

6

*Electronic Registrations Systems, Inc.*, 858 F. Supp. 2d 561, 574 (E.D.N.C. 2012). *See, e.g., Junod v. Dream House Mortgage Co.*, 2012 WL 94355 at *3-*4 (C.D. Cal. 2012); *Hintz v. JPMorgan Chase Bank*, 2011 WL 579339 at *8 (D. Minn. 2011); *Corazzini v. Litton Loan Servicing LLP*, 2010 WL 6787231 at *11 (N.D.N.Y. 2010).

Even if the communication were a QWR, defendants assert correctly that plaintiff fails to state a claim, because he pleads neither actual damages flowing from the charged RESPA violation nor facts showing a pattern or practice of noncompliance with the QWR provisions of RESPA warranting statutory damages under 12 U.S.C. § 2605(f). (Def.'s Reply at 8-9.)

Plaintiff therefore fails to state a claim under RESPA. Because a redrafting of the complaint cannot remedy the shortcomings of plaintiff's attached correspondence with defendants, the cause of action is dismissed with prejudice.

2. <u>Truth in Lending Act</u>

Reading the complaint liberally, the Court construes plaintiff's reference to the Truth in Lending Act ("TILA") as an effort to state a claim under that statute. (Compl., Count 1 ¶ 11; Compl. Ex. 4 at 127.) As with RESPA, plaintiff alleges that BANA and BAC Home Loans, and, by extension, MERS, violated TILA by failing to respond to his December 17 letter. Defendants did not address this claim in their briefing, although they moved to dismiss the complaint in its entirety. Regardless, plaintiff's TILA claim survives.

Pursuant to 15 U.S.C. § 1641(f)(2), "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer,

with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." While plaintiff's letter to BANA and BAC Home Loans did not neatly list the specific information to which he was entitled under TILA, the plain language of his correspondence communicated a request for precisely the type of information that the statute seeks to put in his hands. (Compl. Ex. 4 at 125-127.) In addition to demanding "the name and address of the investor associate with this mortgage loan," plaintiff also asked the recipients to "identify . . . the Holder in Due Course." (Compl. Ex 4 at 127.) Defendants, Bravo alleges, never responded. (Compl., Count 1 ¶ 11.)

Even though §15 U.S.C. § 1641(f)(2) imposes liability only on creditors or assignees, thereby exempting servicers from liability, *see Gale v. Franklin Loan Services*, 701 F. 3d 1240, 1244-45 (9th Cir. 2012); *St. Breux v. U.S. Bank, Nat. Ass'n*, 2013 WL 331592 at *6 (S.D. Fla. 2013); *Matza v. Countrywide Home Loans, Inc.*, 2012 WL 2499203 (D. Nev. 2012); *Ording v. BAC Home Loans Service, LP*, 2011 WL 99016 at *3 (D. Mass. 2011); *Selby v. Bank of America, Inc.*, 2011 WL 902182 at *6 (S.D. Cal. 2011); *Consumer Solutions REO, LLC v. Hillery*, 2010 WL 1222739 at *3 (N.D. Cal 2010), the exhibits to plaintiff's complaint support an inference that BANA and BAC Home Loans not only serviced the loan, (Compl. Ex. 5 at 139), but also were assigned the loan by MERS on October 3, 2010,[6] (Compl. Ex. 3 at 109-11).

---

[6] Plaintiff questions the validity of the transfer. (*E.g.*, Compl., Count 1 ¶ 18.) However, to construe the facts in the light most favorable to the nonmoving party, the Court assumes for the purposes of this claim that MERS assigned the mortgage to BANA and BAC Home Loans.

8

Accordingly, defendants' motion is denied as to BANA and BAC Home Loans but granted as to other defendants. The TILA claims against them are dismissed, but plaintiff is granted leave to replead as to MERS if Bravo can, in good faith, supply facts supporting a control relationship between MERS and either BANA or BAC Home Loans.

3. Fair Debt Collection Practices Act

Plaintiff's letter of December 17, 2011 also made reference to the Fair Debt Collection Practice Act ("FDCPA"), 16 U.S.C. § 1692g(b). (Compl. Ex. 4 at 127.) The Court construes the reference as an attempt to bring an FDCPA claim. As with the TILA claim, defendants did not brief the issue. Notwithstanding, the claim must be dismissed.

FDCPA governs the practices of debt collectors. As defined by statute, a debt collector is any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another ... [as well as] any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). Explicitly excluded from the definition is "any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor" and "any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the

9

collection of debts." 15 U.S.C. § 1692a(6)(a), (b).

A borrower can trigger a dispute procedure under FDCPA by sending a written notice within 30 days of receiving a statutorily-required notice from a debt collector. 15 U.S.C. § 1692g(b). The letter either must alert the debt collector that the debt is disputed or request the name and address of the original creditor. 15 U.S.C. § 1692g(b). Upon receipt of such a notice, the debt collector must cease collection activities until the verification of the debt or the name and address of the original creditor is obtained and provided to the borrower. 15 U.S.C. § 1692g(b).

Even if Bravo's letter is construed as disputing the debt, the complaint suffers three fatal deficiencies. First, plaintiff does not refer to an initial notice from any defendant, rendering it impossible to assess whether the letter was sent within the 30-day window for initiating a dispute. Second, the pleadings are silent as to whether defendants continued to attempt to collect the debt. Finally, Bravo's papers fail to allege that any of the recipients of the letter qualified as a debt collector, as defined by 15 U.S.C. § 1692a(6).[7]

Plaintiff's FDCPA claim is therefore dismissed as to all defendants. Bravo may amend his complaint to remedy the foregoing shortcomings vis a vis BANA and BAC Home Loans. Additionally, as with plaintiff's TILA claim, plaintiff is granted leave to replead his claim as to MERS if Bravo can, in good faith, supply

---

[7] The Court notes that if MERS' assignment of the loan is in fact valid, and if the mortgage followed the note, as required by law, BANA and BAC Home Loans probably fall within one of the two carve-outs codified at 15 U.S.C. § 1692a(6)(a), (b).

facts supporting a control relationship between the defendant and either BANA or BAC Home Loans.

4. <u>Breach of Contract</u>

To state a claim for breach of contract, plaintiff must show (1) the existence of a contract; (2) claimant's performance under the contract; (3) defendant's breach; and (4) resulting damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Defendants contend persuasively that plaintiff's claim suffers three fatal defects.[8] (Def.'s Opp. at 10-13.) First, plaintiff fails to plead facts demonstrating his own adequate performance. (Def.'s Opp. at 11-12.) Second, the complaint fails to allege an actual breach. (Def.'s Opp. at 12.) Lastly, the complaint is devoid of causally connected damages. (Def.'s Opp. at 13.)

Plaintiff does not start off on sound footing. Bravo admits in his pleadings not only that he fell behind on his mortgage payments, (Compl., Count 1 ¶ 7), but that he ultimately decided to stop paying altogether, (Compl., Count 1 ¶ 9). Absent additional pleadings justifying plaintiff's conduct, it appears that plaintiff, not defendant, violated the terms of the mortgage. Pursuant to § 1 of the Covenants section of the agreement, plaintiff must "pay [l]ender on time principal and interest due under the note." (Compl. Ex. 1 at 43.) Not having fulfilled his obligations under the contract, plaintiff cannot sustain a claim for breach of contract. *Radin v.*

---

[8] Although plaintiff contests the validity of the assignment of the mortgage to BANA and/or BAC Home Loans, (Compl., Count 1 ¶¶ 12, 19, 25, 26, 28, 29, 32-36), and by extension brings into question whether the relevant contracts would apply to BANA or BAC Home Loans at all, the Court assumes for the purpose of this claim that both the note and mortgage bind these two defendants.

*Albert Eistein College of Medicine of Yeshiva University*, 2005 WL 1214281 at *14 (S.D.N.Y. 2005).

Focusing on whether BANA or BAC Home Loans violated the terms of either the note or the mortgage, Bravo pleads five alleged violations: refusing to modify the terms of his loan, (Compl, Count 1 ¶ 5), sending default notices, (Compl., Count1 ¶ 7), accelerating the loan, (Compl., Count1 ¶ 7), threatening foreclosure, (Compl., Count1 ¶ 7), and failing to prove ownership of the loan or otherwise justify its assignment (Compl, Count 1 ¶¶ 24-37). In fact, either the note or the mortgage authorizes each of the first four alleged violations. Section 12(a) of the mortgage grants the lender the right to "refuse to extend time for payment or otherwise modify amortization of the Sums Secured." (Compl. Ex. 2 at 89.) Section 6(C) of the note requires the lender to send written notice, (Compl. Ex. 1 at 61), if the borrower defaulted on the loan, as plaintiff admits he did, (Compl. ¶ 7). Moreover, § 6(C) of the note entitles the lender to accelerate the loan. (Compl. Ex. 1 at 61.) Finally, § 22(b)(4) of the mortgage requires the lender to give notice that in the event of a "failure to correct the default . . . [l]ender or another person may acquire the [p]roperty by means of foreclosure." (Compl. Ex. 2 at 95.) Conversely, plaintiff does not plead, and the Court did not find on independent review, a single provision of either the note or the mortgage requiring the lender to prove its ownership of either the note or the mortgage or otherwise alert the borrower of an assignment or transfer.

Plaintiff's claim also falls short, because the complaint does not

support an inference that any breach by defendants caused cognizable damages. Bravo simply demands $500,000 for "actual and future damages." (Compl., Prayer for Relief ¶ 51.) "A claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach caused damages, even where the exact amount of damages is alleged." *Comfort Inn Oceanside v. Hertz Corp.*, 2011 WL 5238658 at *8 (E.D.N.Y. 2011). Failing to do so, plaintiff cannot sustain a claim for breach of contract.

Plaintiff's claim is dismissed with prejudice, since nothing in the pleadings even hints that such a claim may be validly repleaded in an amended complaint.

5. U.C.C. Claims

Plaintiff alleges that defendants violated three provisions of the U.C.C.[9] (Compl, Count 1 ¶¶ 19, 20; Count 2, ¶¶ 46-50.) He first attacks MERS as the contractually-designated nominee of loan originator, Countrywide Home Loans, Inc. (Compl., Count 1¶¶ 19, 35.) Without stating at what point MERS had a duty to prove to the note holder (the lender) its authority "to dispose of collateral," much less how he, as the borrower, would have been aware of any such disclosure, Bravo contends that defendants ran afoul of U.C.C. § 3-104(1)(a), (b) by failing to supply evidence of MERS' authority to do so. (Compl., Count 1¶¶ 19, 35.) As defendants

---

[9] Bravo casts the alleged U.C.C. violations as violations of "the basic principal *[sic]* of contract law." (Compl., Count 2.) As interposed, however, these violations stem from alleged breaches of the Code as opposed to actual breaches of any provision of the agreement executed by the parties.

argue, U.C.C. 3-104 does not, in fact, create a duty of disclosure. Rather, the cited provision defines the term "negotiable instrument" as an "unconditional promise or order to pay a sum certain in money." § 3-104(1)(b). Plaintiff's note constitutes a negotiable instrument pursuant to § 3-104(1)(b), *Mortgage Electronic Registration Systems, Inc. v. Coakley*, 838 N.Y.S.2d 622, 623 (N.Y. App. Div. 2nd Dept. 2007), but that fact alone does not create liability under the Code as a freestanding matter.

Bravo goes on to charge that defendants violated U.C.C. §§ 3-602 and 3-603 by benefitting financially from payments he made on his loan, which defendants neither held as owners in due course nor to which they had an alternate source of right. (Compl., Count 2 ¶¶ 46-50.) Defendants contend correctly that, even if they wrongly benefitted from Bravo's payments, they would not have violated §§ 3-602(a) or 3-603(a). The former establishes the conditions under which a borrower can satisfy his obligation by paying a party other than the party entitled to enforce the instrument. U.C.C. § 3-602. The latter addresses payment of an obligation. Neither bears upon which parties can benefit from such payments. Ultimately, as long as the borrower is credited with proper payment required by the instrument, who might, in fact, finally benefit from that payment, under the U.C.C., is none of the borrower's concern.

In sum, plaintiff states no facts supporting a cause of action under any of the U.C.C. provisions cited in the complaint. There is absolutely nothing in the pleadings to suggest plaintiff has even a faint hope of amending his claim to assert a cause of action resting on violation of any U.C.C. provision. Leave to attempt such

amendment is denied.

6. Fraud

In his motion opposition, Bravo alleges that "[f]or the same reasons already discussed above, it's clear that the [p]laintiff has pleaded a plausible fraud claim against defendant." (Pl.'s Br. ¶ 53.) In any case, he does not assert fraud in his actual pleadings, so any such claim is not properly before the Court. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Of course, evidence of a plausible claim would win a chance to replead it in an amended complaint. The Court finds, however, that his factual allegations fall far short of suggesting that a plausible fraud claim exists.

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Solow v. Citigroup, Inc.*, 2013 WL 149902 at *2 (2d Cir. 2013). "[A] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

In his opposition papers, Bravo argues that the mortgage documents were inherently "misleading concerning the 'interest rate[s] and payment amounts,'" and by containing "language that was difficult to understand." (Pl.'s Br. ¶49.) Even assuming these allegations to be true, as the Court must at this stage

15

of the proceedings, plaintiff's claim fails. To start, the only alleged misrepresentation plaintiff cites in his brief is the language of the contract itself. Disagreements as to the meaning of contract language are properly resolved as matters of contract law, not as tort claims for fraud. *Cf. Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, 2010 WL 1882316 (D. Conn. 2010). Moreover, nowhere does plaintiff present facts supporting an inference that any defendant intended to defraud him. Complex contract language that seems inscrutable or misleading to a layperson will not suffice. The pleadings are silent as to defendants' "conscious misbehavior or recklessness." *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Other than a result displeasing to Bravo and the label of fraud, there is nothing but a standard transaction. No other act or omission is mentioned.

Plaintiff's fraud claim, therefore, fails as a matter of law and is dismissed with prejudice.

7. <u>Declaratory Judgment Act</u>

The Court's power to order declaratory relief emanates from the Declaratory Judgment Act ("DJA"). The DJA is purely procedural and neither creates substantive rights beyond those available under the law, nor produces otherwise unavailable causes of action. *See, e.g., Chevron Corp. v. Naranjo*, 667 F.3d 232, 244-245 (2d Cir. 2012). Where, as here, plaintiff does not prevail on such separate claim or claims, the Court cannot order declaratory relief under the DJA.

## Conclusion

For all the forgoing reasons, defendants' motion is denied as to plaintiff's TILA claim against BANA and BAC Home Loans. The motion is granted to the extent that plaintiff's RESPA, breach of contract, U.C.C., and fraud claims are dismissed with prejudice as to all defendants. Further, plaintiff's FDCPA and TILA claims are dismissed with prejudice as to MERSCORP and BOA. Plaintiff's FDCPA claim is dismissed without prejudice as to BANA, BAC Home Loans, and MERS, and his TILA claim is dismissed without prejudice as to MERS. With respect to all claims dismissed without prejudice, 30 days leave is granted from the entry of this order to replead those claims. To do so, plaintiff shall file an amended complaint containing all of his factual allegations, including any documents or other exhibits, in support of those FDCPA and TILA claim. The amended complaint shall be identified as the "Amended Complaint" and bear the same docket number as this Order.

SO ORDERED.

Dated: Brooklyn, New York
April 9, 2013

s/ ENV

_____
ERIC N. VITALIANO
United States District Judge